UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL A. WERKING,

                                        Plaintiff,

        v.                                                    1:11-cv-410

MICHAEL ANDREWS, WILLIAM WEISHAUPT,
COUNTY OF ULSTER, NEW YORK and the
ULSTER COUNTY SHERIFF'S DEPARTMENT,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Michael Werking commenced the instant action against Defendants

Michael Andrews, William Weishaupt, the County of Ulster, and the Ulster County Sheriff's

Department pursuant to 42 U.S.C. § 1983 arising out of his arrest and prosecution.

Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R.

Civ. P. 56 seeking dismissal of the Complaint in its entirety and Plaintiff's cross-motion for

leave to file a third amended complaint.

**I.        FACTS**

        Shawn Moxham is the registered owner of a trailer.  In 2008, Moxham decided he

could no longer use the trailer.  In approximately May of 2008, Moxham contacted Plaintiff to

arrange to have the trailer leased and/or sold.  According to Plaintiff, the trailer needed

substantial repairs before it could be leased and/or sold.  Plaintiff, therefore, claims to have

made certain repairs to the trailer.[1]  Pursuant to invoice number 09156 dated June 11, 2008 from Albany Avenue Truck & Trailer, Inc.,[2] Werking claimed an artisan's lien on the trailer in the amount of $5,228.23.  In June 2008, Plaintiff leased the trailer to an individual, Ashton Smith, on behalf of Moxham.[3]  Smith later opted not to continue using the trailer and returned it to Plaintiff in November 2008.  When the payments on the lease ceased, Moxham sought the return of his trailer.  These efforts were unsuccessful.

In May 2009, Moxham contacted Defendant William Weishaupt, an Assistant District Attorney with the County of Ulster, claiming that his trailer was being held illegally by Plaintiff.  The matter was assigned to Defendant Michael Andrews, who was then a detective with the Ulster County Sheriff's Department assigned to the Ulster County District Attorney's Office.  Defendants undertook to investigate the matter.

Defendants went to Albany Avenue Truck & Trailer to speak with Plaintiff and request documents.  Defendants requested the invoice for the repairs claimed to have been performed on the trailer.  Plaintiff initially was unable to produce the invoice, but provided it at a later date.  The invoice was shown to Moxham who claimed to have never seen the invoice and to have not authorized any work to be performed on the trailer.[4]  Apparently suspecting that the invoice was a fake, in June 2009 Defendants requested that Plaintiff provide a copy

---

[1] The parties dispute whether any repairs were made to the trailer and, if so, whether any such repairs were authorized.

[2] Werking has an ownership interest in Albany Avenue Truck & Trailer, Inc.

[3] The written lease agreement only indicates that it was executed in "June 2008" and does not contain a specific date on which it was executed.  It, thus, is unknown whether the lease was executed before or after the June 11, 2008 invoice.

[4] There was a signature on the invoice bearing Moxham's name.  The parties dispute whether the signature is that of Moxham or a forgery.

of invoice numbers 09155 and 09157, the invoices immediately preceding and following the subject invoice.  Plaintiff did not supply copies of the requested invoices.  Defendants also requested information concerning the location of the trailer so they could inspect it to see if the claimed work was completed.  Plaintiff refused to disclose the location of the trailer. Defendants sought to obtain a handwriting analysis of the invoice and Moxham's signature, but, for various reasons, were unable to have a handwriting analysis performed.  In August 2009, Andrews corresponded with Plaintiff setting forth Defendants' belief that Plaintiff was unlawfully holding the trailer and that it should be returned immediately in lieu of prosecution on charges of grand larceny.  The trailer was not returned.

On August 24, 2009, Andrews prepared a felony complaint for one count of grand larceny in the third degree alleging that Plaintiff was wrongfully withholding the trailer under false pretenses and rights normally afforded under an artisan lien.  The Town Justice for the Town of Ulster issued an arrest warrant on September 11, 2009.  The arrest warrant was executed on October 13, 2009.  On February 26, 2010, Weishaupt applied to the County Court for the County of Ulster to have the charges reduced to a misdemeanor charge of petit larceny to be prosecuted in the Town of Ulster Justice Court.  The misdemeanor charge of petit larceny was ultimately dismissed by the Town Justice on consent by the Assistant District Attorney assigned to prosecute the matter.

Plaintiff then commenced the instant action against Defendants claiming violations of his rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution.  Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 and Plaintiff's cross-motion for leave to file a third amended complaint.

## II.      STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56.  It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motions.

III.     **DISCUSSION**[5]

    a.     <u>**Malicious Prosecution**</u>

       Plaintiff claims that he was maliciously prosecuted by Defendants.  Defendants move to dismiss this claim on the ground that they acted with probable cause or arguable probable cause.

       It is well-settled that, to establish a claim for malicious prosecution, the plaintiff must prove that: (1) the defendant initiated or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) the defendant lacked probable cause to commence the proceeding; and (4) the defendant was motivated by actual malice. <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997).  The first two elements are readily satisfied.  Defendants claim, however, that they acted with probable cause and that they were not motivated by malice.

       Upon review of the totality of the circumstances, the Court finds that, for the following reasons, Defendants had reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution to believe that Plaintiff committed a crime and, therefore, acted with probable cause. <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  First, Defendants received a complaint from the purported victim that he owned the trailer and Plaintiff refused to return it.  It is well-settled that, absent reason to question the veracity of the complainant, "a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or

---

     [5] In addressing the pending motions, the Court has disregarded Plaintiff's reply memorandum of law (Dkt. No. 36) which is not permitted under this Court's local rules.  N.D.N.Y.L.R. 7.1(c) ("The cross-moving party may not reply in further support of its cross-motion without the Court's prior permission.").

eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).  The information from Moxham was that he owned the trailer, Plaintiff had possession of the trailer, Plaintiff refused to return the trailer, and Plaintiff was not entitled to assert a lien because Moxham had not authorized any work to be performed on the trailer.  This was sufficient to cause Defendants to believe that Plaintiff was withholding the trailer under false pretenses in violation of New York State Penal Law § 155.35.[6]

  Plaintiff responds that Defendants had reason to doubt Moxham's veracity.  In support, they point to a letter in Defendants possession from Moxham's attorney.  In that letter, the attorney seeks return of the trailer from Plaintiff.  The attorney wrote that:

> [s]ince June [2008], Mr. Smith has had possession and use of the trailer, while only paying my client $300.00 on the agreed price of $21,500.00.  I have received word from Mr. Smith that he no longer wishes to purchase the trailer and has delivered the trailer to you.
>
> Please . . . contact me so as to make arrangements from the delivery of the trailer to my client. . . .

Plaintiff argues that this letter is false because Moxham received $1,800 from Smith; not $300 as claimed.  Plaintiff further points out that Defendants were aware of this falsity

---

[6] Larceny by means of false pretenses is committed when a person obtains possession of personal property by means of a false material statement about a past or presently existing fact.  People v. Norman, 85 N.Y.2d 609 (1995).  The elements of grand larceny in the third degree by false pretenses are (1) intent to deprive an owner of property, (2) the making of a false representation, (3) knowledge of the falsity, (4) obtaining the property of another, and (5) that the owner was induced by the representation to give up the property.  Norman v. Hynes, 20 A.D.3d 125, 132, 799 N.Y.S.2d 222, 226-27 (2005).  These elements are reasonably satisfied here as follows: (1) the intent to deprive Moxham of property can be found in Plaintiff's refusal to return the trailer and his failure to disclose its whereabouts; (2) the claim of an artisan's lien can be found to have been a knowingly false representation; (3) Plaintiff possessed the trailer; and (4) Moxham delivered the trailer to Plaintiff on the belief that Plaintiff would sell and/or lease the trailer, turn the payments over to Moxham without claiming monies due for unauthorized repairs, and not retain the trailer and refuse to disclose its location; and Plaintiff secreted the trailer when Moxham sought its return.

because they had in their possession copies of the canceled checks showing that Moxham received $1,800.

Although the reference to receiving $300 may have been inaccurate, it is insufficient to establish a basis for doubting Moxham's veracity concerning whether the trailer was being held unlawfully.  The letter came from Moxham's attorney.  It is not known whether the monetary amounts were errors by the attorney or based on misstatements by Moxham.  Even assuming it was a misstatement by Moxham, this discrepancy is irrelevant to the facts at issue here.  The letter from Moxham's attorney substantiated the claim that the trailer had been placed with Plaintiff to be leased and/or sold, the lease and/or sale had been terminated, the trailer remained in Plaintiff's possession, and Plaintiff refused to return the trailer to Moxham.  Moreover, Defendants questioned Moxham about the amount of money he received from Plaintiff and Moxham conceded that he received more checks than he had thought.

Second, Defendants undertook reasonable efforts to investigate the matter.  They sought to inspect the trailer, but were denied access by Plaintiff.  They sought a copy of the repair invoice from Plaintiff at his place of business.  Plaintiff was unable to produce a copy of the invoice upon request (thereby raising some suspicion concerning its existence and/or authenticity).  Plaintiff supplied an invoice at a later date.  Defendants believed the invoice to have been suspicious because Moxham denied having seen or signed the invoice, and Defendants believed the invoice to have been written entirely in the same pen, with the same pressure, and in the same writing.  Defendants further noted that the invoice appeared to be in a condition too clean to suggest it came out of an automobile repair shop (which ordinarily have grease and/or oil stains on them).  Defendants also sought to investigate the veracity of

the invoice by requesting copies of the immediately preceding and subsequent invoices. Plaintiff did not supply the requested information.

Third, Defendants had a report from March 12, 2008 (approximately three months prior to the time Plaintiff obtained possession of the trailer) indicating that the trailer was in good working condition and that none of its components needed repair. This information tended to substantiate the conclusion that no repairs were made (or needed to be made) by Plaintiff and, therefore, that the claim of an artisan's lien was unfounded.

Fourth, Plaintiff secreted the location of the trailer from Plaintiff and the police.

These facts are sufficient to establish probable cause or, at the very least, arguable probable cause of grand larceny in the third degree. Accordingly, the malicious prosecution claims must be dismissed.[7]

### b.   Motion to Amend

Plaintiff cross-moves for leave to amend his Complaint to assert a claim for abuse of process. Plaintiff contends that the Ulster County District Attorney's office routinely abuses the criminal process by having individuals arrested and prosecuted for no other reason than that those individuals refused to comply with the prosecution's extortionate demands. Specifically, Plaintiff argues that he was arrested and prosecuted for refusing to relinquish his possession of, and statutory lien on, Moxham's trailer. Defendants oppose the motion on the ground that it is untimely, they are prejudiced by the delay, and the new claim is without merit.

---

[7] Plaintiff has withdrawn his malicious prosecution claims against the County.

As an initial matter, the motion must be denied because Plaintiff failed to "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means."  N.D.N.Y.L.R. 7.1(a)(4).  Even overlooking this procedural shortcoming, the motion must, nevertheless, be denied.

The elements of an abuse of process claim are:  (1) the use of regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).   Essential to a claim for malicious abuse of process is that the defendants acted with intent to do harm without excuse or justification to obtain a collateral objective that is outside the legitimate ends of the process.  Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003).  Here, the facts as alleged are insufficient to establish that Defendants acted to do harm without excuse or justification or to obtain a collateral objective outside the legitimate ends of the process. The purpose of Defendants' actions was to seek the return of Moxham's property which was believed to have been held unlawfully by Plaintiff, thereby supplying justification for an objective that is within the legitimate ends of process.  It is ordinary and proper for law enforcement officers to seek to discontinue conduct reasonably believed to be unlawful in lieu of criminal prosecution.

Further, "[t]he pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim."  Lopez v. City of New York, 901 F.Supp. 684, 691 (S.D.N.Y. 1995); see also Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (quoting 2 Committee on Pattern Jury Instructions, Association of Supreme Court

Justices, New York Pattern Jury Instructions § 3:51 at 816 (1968) ("[t]he gist of abuse of process is the improper use of process after it is regularly issued."); De Santis v. City of New York, 10 CIV. 3508 NRB, 2011 WL 4005331 (S.D.N.Y. Aug. 29, 2011); Curiano v. Suozzi, 63 N.Y.2d 113, 117.  In the instant case, Defendants' efforts to obtain the property occurred *before* the institution of criminal proceedings and, therefore, the allegations in the proposed amended complaint fail to state a claim upon which relief may be granted.  Accordingly, the motion for leave to amend the complaint to assert a claim for abuse of process on behalf of Plaintiff is denied.

Lastly, Plaintiff moves to amend the Complaint to add a new Plaintiff, Colleen Neidermier.  Neidermier wishes to assert an abuse of process claim against Defendants arising out of conduct wholly unrelated to the transactions concerning Plaintiff Werking. Neidermier's claims arise out of a series of events in 2010 wherein she claims to have been gifted a dog as a pet from Patrick Taaffee.  The Ulster County District Attorney's office received a complaint from Taaffee that he purchased the dog and Neidermier refused to return it.  The District Attorney's office sent a letter to Neidermier stating that "[t]he purpose of this correspondence is to afford you the opportunity to return the canine to Mr. Taaffee or risk an arrest for grand larceny."  Based on this letter and a subsequent prosecution, Neidermeir asserts a claim of abuse of process.  For the reasons stated above in connection with Werking's abuse of process claim, Neidermier's allegations fail to state a claim upon which relief can be granted.[8]

---

[8] Assuming, *arguendo*, that these allegations did state a claim, because Neidermier's claims involve facts and circumstances unrelated to Werking's claims and the Court has dismissed Werking's federal claims, the Court would, nonetheless, deny the motion for leave to amend claims on behalf of Neidermier.

**IV.       CONCLUSION**

       For the foregoing reasons, Defendants' motion for summary judgment is

GRANTED and Plaintiff's cross-motion for leave to file an amended Complaint is DENIED.

Having dismissed the federal claims at this early juncture of the litigation, the Court declines

to exercise supplemental jurisdiction over any related state law claims.

IT IS SO ORDERED.

Dated: July 13, 2012

Thomas J. McAvoy
Senior, U.S. District Judge